OPINION OF THE COURT
Alan J. Saks, J.
On the trial of this matter, the facts were stipulated to. The sole issue is whether defendant’s student loan was discharged in bankruptcy.
On May 8, 1979, defendant obtained from the Chase Manhattan Bank a guaranteed student loan at 7% annual interest in the amount of $1,250. On August 16, 1979, defendant filed a petition in chapter 7 bankruptcy in the United States District Court, Southern District of New York. This loan was duly listed in the schedule of debts and notice of the proceeding was given to plaintiff New York State Higher Education Services Corporation (NYSHEC). Under index 79 B 1483, the case was assigned to the supervision of Bankruptcy Judge Lewittes. On February 13, 1980, an order discharging defendant as a bankrupt was rendered and it was filed in Bankruptcy Court the next day. On May 3,1980, New York State Higher Education Services Corporation paid the bank, under the guarantee, the amount of the loan plus accrued interest, no part *929 of the loan having been repaid, and the promissory note evidencing the loan was assigned to New York State Higher Education Services Corporation. This action to collect the loan, plus accrued interest at 7%, was initiated on February 29, 1983.
The court should further note that defendant is a Uniformed Court Officer of the New York State Judicial System.
The statutory provisions limiting the effect of a discharge in bankruptcy on guaranteed student loans were originally enacted in 1976, and added to the Higher Education Act of 1965, as amended (US Code, tit 20, § 1071 et seq.). Under those provisions, this debt would not have been discharged, under the facts stipulated to. See the former wording of section 1087-3 (subd [a]) of title 20 of the United States Code, which by subdivision (b) was made effective to any bankruptcy proceeding begun on or after September 30, 1977. In 1978, Congress repealed them and replaced them with analogous conditions, when it enacted the Bankruptcy Reform Act of 1978 ([BRA], 92 US Stat 2549). The new restrictions on discharge were placed in section 523 (subd [a], par [8]) of title 11 of the United States Code. The debt in this case does not qualify for discharge under the new restrictions. However, the mechanism by which Congress acted to change the restrictions has led some student loan debtors to claim that a “loophole” hiatus was created for a certain period of time, during which some student loans became free of any restriction on discharge in bankruptcy.
The repeal of the earlier restrictions was accomplished by section 317 of the BRA. Subdivision (d) of section 402 of the BRA states that section 317, among others, shall take effect upon enactment of the BRA, which occurred on November 6, 1978. However, subdivision (a) of section 402 states that “[e]xcept as otherwise provided in this title, this Act shall take effect on October 1, 1979.” Thus, it was contended, the act created an 11-month “window of vulnerability” for unrestricted discharge.
Matter of Adamo (619 F2d 217, cert den sub nom. Williams v New York State Higher Educ. Servs. Corp., 449 US 843), involved a number of petitioners in bankruptcy who *930 filed their petitions between October 9, 1977 and October 2,1978. Their petitions were resolved during the aforesaid 11-month period. The Bankruptcy Judge held subsequently that, because the resolution of their petitions had occurred during the “hiatus,” the discharges were unconditional as to their student loans. Upon affirmance by the District Court, an appeal to the United States Court of Appeals, Second Circuit, followed. That court refused to give effect to what it found to be a pure oversight on the part of Congress, one that was conceded by the next Congress to be but an oversight, and held that the earlier restrictions remained applicable until they were superseded October 1, 1979. Thus, the debts were held not discharged.
Although the denial of certiorari by the Supreme Court may be said to leave slightly open the question presented in Matter of Adamo (supra), the decision appears to have been accepted as authoritative by numerous other circuits of the Court of Appeals. Moreover, the defendant here stands in a much weaker position than the debtors in Adamo. Although the making of the loan and the filing in bankruptcy (just three months later) occurred during the hiatus period, her discharge in bankruptcy did not occur until February 13, 1980, more than four months after the replacement provisions had taken effect. Under the latter, a discharge in bankruptcy leaves a guaranteed student loan debt unimpaired unless either: (a) the loan first became due more than five years before the date of filing the petition, or (b) continuance of the debt will impose an undue hardship on the debtor and the debtor’s dependents. Condition (a) is obviously inapplicable. The petition followed almost immediately the taking of the loan. On the trial of this matter, petitioner did not claim that the debt herein will impose an undue hardship. She merely expressed annoyance that NYSHEC did not file in bankruptcy as a creditor, because, she stated, about $2,000 of her assets were distributed to creditors in bankruptcy. Thus, she contends, she would not owe NYSHEC as much as she does if it had filed a claim. Even if the facts asserted are assumed to be true, this argument is irrelevant. The limitation on discharge of student loans is self-executing. *931 The creditor does not have to come into Bankruptcy Court to invoke it. (Collier Bankruptcy Code [Herzog & King, 1983 Pamphlet ed], p 247.) There being no proof that the Bankruptcy Court made a hardship finding and no evidence before this court of hardship, the second exception is inapplicable. Indeed, the only pertinent facts known with respect to defendant’s finances are that defendant obtained a discharge of most of her debts four years ago and the amount of the instant debt is not unduly large compared with her employment as a Uniformed Court Officer.
The clerk is directed to enter judgment for the plaintiff for the principal sum of $1,250, plus interest at 7% per annum since May 8, 1979. Plaintiff is also entitled to an award of attorney fees, but in view of the limited amount of time and effort required in this litigation the court hereby restricts the same to $75.