Sue Harris DEBAUCHE, Plaintiff,

v.

VIRGINIA COMMONWEALTH
UNIVERSITY, et. al.,
Defendants.

No. Civ.A. 3:97CV770.

United States District Court,
E.D. Virginia,
Richmond Division.

April 13, 1998.

James Jeffrey Knicely, Knicely & Cotorceanu, Williamsburg, VA, Thomas Stephen Neuberger, Wilmington, DE, John W. Whitehead, Charlottesville, VA, Jamin Raskin, Professor, Washington, DC, for Sue Harris DeBauche, plaintiff.

Alison Paige Landry, Office of Atty. Gen., Ronald C. Forehand, Senior Assistant Attorney General, William Henry Hurd, Office of Atty. Gen., Richmond, VA, for Virginia Commonwealth University, Eugene P. Trani, defendants.

Roger Lee Gregory, Lawrence Douglas Wilder, Jr., Kimberly Friend Smith, Wilder & Gregory, Richmond, VA, for L. Douglas Wilder, defendant.

Robert Lawrence Brooke, Andrew Gray Mauck, Mays & Valentine, Richmond, VA, for Clear Channel Radio, Inc., defendant.

Robert Hewitt Pate, III, John Samuel Martin, Hunton & Williams, Richmond, VA, for Central Virginia Educational Telecommunications, Inc., defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER is before the Court on four motions by the defendants. The first is a motion to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure by the defendants Virginia Commonwealth University ("VCU") and VCU President Eugene Trani, in both his individual and official capacities (collectively, "University Defendants"). The second is a motion to dismiss the Amended Complaint under Rule 12(b)(6) by the owner of television station WNVT, Central Virginia Educational Telecommunications, Inc. ("CVETC"). The third is a motion to dismiss, or in the alternative motion for summary judgment, by Clear Channel Radio, Inc. ("Clear Channel Radio"), the owner of radio station WRVA. Finally, the fourth is a motion by Lawrence Douglas Wilder ("Wilder") to dismiss under Rule 12(b)(6) or for summary judgment under Rule 56. For the reasons expressed below, the Court GRANTS the University Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6) as well as CVETC, Clear Channel Radio and

Wilder's motions to dismiss under Rule 12(b)(6).

## I. Background

The plaintiff Sue Harris DeBauche ("DeBauche") is the State Chairman of the Virginia Reform Party. She was a state-qualified and balloted Virginia Reform Party candidate for Governor of Virginia in the 1997 election. This case concerns DeBauche's exclusion from a gubernatorial debate entitled "Debate Virginia."

In April 1997, former Governor Wilder, who was a radio personality at WRVA, proposed and planned a debate between James S. Gilmore III ("Gilmore") and Donald S. Beyer ("Beyer"), who at the time were the only duly-qualified candidates for Governor. Some time after, VCU and President Trani offered the premises of VCU as a forum in which to hold the debate and offered to contribute VCU personnel, staff and other resources to promote, manage and execute the debate. On or about September 10, 1997, Wilder accepted VCU's offer to hold Debate Virginia. This debate was then promoted to the public by VCU and radio station WRVA. Between September 15, 1997 [1] and October 1, 1997, DeBauche made requests to participate in Debate Virginia but she never received a response from Wilder or VCU.

Nonetheless, Debate Virginia was held on October 6, 1997 with only Gilmore and Beyer as participants. It was held before an audience of hundreds of invited guests and was broadcast to most areas of Virginia, including live broadcasts by the defendants WRVA and WNVT, among others. Soon after, on or about October 21, 1997, DeBauche made a written demand to VCU and Trani that they schedule a gubernatorial debate including Gilmore, Beyer and herself prior to the November 4, 1997 election to remedy the supposed damage done to DeBauche and her Party. VCU and Trani rejected this demand three days later.

In the November 4 election, Gilmore won. DeBauche failed to garner ten percent of the vote, the amount needed for the Reform Party to have automatic ballot access in the next race. As a result, she has brought this suit against the University Defendants, Wilder, CVETC and Clear Channel Radio.

The Amended Complaint has four counts.[2] Count one alleges that the defendants violated DeBauche, the Reform Party and its members' constitutional rights to free speech and freedom of association as guaranteed by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Count two claims that the defendants' actions violated their rights to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983 "by unlawfully discriminating on the basis of the content or viewpoint of her speech." Count three alleges that the defendant violated their rights to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983 by "unlawfully classifying the duly-qualified and-balloted candidates for Governor of Virginia without a reasonable or compelling state interest and in a manner that failed to satisfy constitutional requirements." Finally, Count four claims their rights under the Ninth and Fourteenth Amendments and 42 U.S.C. § 1983 were violated by the defendants. The University Defendants, Clear Channel Radio, CVETC and Wilder have moved for dismissal of the Amended Complaint.

## II. Discussion

### A. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim on the grounds of failure to state a claim upon which relief can be granted. When considering such a motion, the Court must presume that all factual allegations in the complaint are true. *Martin Marietta v. International Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992). All reasonable inferences must be construed in the light most favorable to the non-moving party. *Id.* The Court Should not

---

1. September 15 is the date on which DeBauche became duly-qualified as a candidate for Governor.

2. The original complaint was filed on October 15, 1997. After reviewing documents from Beyer and Gilmore as well as VCU's web site, DeBauche amended the complaint to add WRVA and CVETC as defendants.

dismiss any claim unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995).

▮ The standard of review for a 12(b)(1) motion, in turn, is a function of the motion's purpose. Where the motion constitutes a facial attack upon the complaint's allegations of subject matter jurisdiction, the Court must presume that all factual allegations in the complaint are true, *Com. of Puerto Rico ex rel. Quiros v. Alfred L. Snapp & Sons*, 632 F.2d 365 (4th Cir.1980), *aff'd*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), and make all reasonable inferences in the plaintiff's favor. *Johnson v. Mueller*, 415 F.2d 354 (4th Cir.1969); *MacKethan v. Peat, Marwick, Mitchell & Co.*, 439 F.Supp. 1090 (E.D.Va.1977). In this case, however, the motion challenges the actual existence of the Court's subject matter jurisdiction. In such a situation, the Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993) (citations omitted). *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). It is the plaintiff's burden to prove that jurisdiction in this Court is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Fleming v. Workers' Comp. Comm'n*, 878 F.Supp. 852, 857 (E.D.Va.1995), *aff'd*, 78 F.3d 578, 1996 WL 93843 (4th Cir.1996). While the Court will read the plaintiff's complaint as a whole and will construe it broadly and liberally, it is not bound to draw argumentative inferences in the plaintiff's favor. *Flue–Cured Tobacco Coop. v. United States EPA*, 857 F.Supp. 1137, 1140 (M.D.N.C.1994).

## B. Analysis

▮ The Court must first note that, although the election has occurred, the claims in DeBauche's Amended Complaint are not moot. It is more than conceivable that DeBauche as a Reform Party candidate for a political office will be excluded from a debate including only Democratic and Republican candidates and involving a state university. Even though DeBauche may attempt a preliminary injunction to stop such a debate, a court's final resolution of the matter may not occur before the election, particularly if the debate were to occur in the few weeks before the election. The effects on minority-party candidates like DeBauche from the circumstances presented in this case will persist in future elections but "within a time frame too short to allow resolution through litigation." *See Johnson v. F.C.C.*, 829 F.2d 157, 159, n. 7 (D.C.Cir.1987).

▮ However, DeBauche lacks standing to assert claims on behalf of the Reform Party. The alleged harm committed by the defendants was to exclude DeBauche from Debate Virginia. DeBauche does not allege, and cannot seriously allege, that the defendants have control over the gubernatorial election, its results, or automatic ballot access so that the Reform Party's loss of automatic ballot access can be attributed to the defendants. Therefore, the alleged injury to the Reform Party is tenuously related to the alleged harm to DeBauche. Moreover, there is no indication that the Reform Party has designated DeBauche to bring this suit on its behalf for any injury. *See Marshall v. Meadows*, 921 F.Supp. 1490, 1493 (E.D.Va. 1996) (explaining party member cannot have standing when representing the party's interests if the party itself has not sought suit).

With that said, the Court will address the parties' arguments in two groups: the University Defendants and then the remaining defendants, who are all private parties.

### 1. The University Defendants

#### i. Eleventh Amendment

The Eleventh Amendment generally precludes lawsuits against the states, state agencies, or individual state officers in their official capacity. *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). According to the University Defendants, because VCU is a state-supported institution, it is considered the Commonwealth of Virginia for purposes of the Eleventh Amendment and cannot be sued. In *Harter*

*v. Vernon,* 101 F.3d 334, 341 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997), the Fourth Circuit stated its four-pronged test for determining whether an entity is an "arm of the state" and, thus, enjoys Eleventh Amendment immunity. The four factors are: (1) whether the state treasury will be responsible for paying any judgment that might be awarded; (2) whether the entity exercises a significant degree of autonomy from the state; (3) whether it is involved with local versus statewide concerns; and (4) how it is treated as a matter of State law. *Id.* at 340 (quotations and citation omitted). A court's inquiry should begin with the most important factor, which concerns the state treasury, and "if the State Treasury will pay the judgment, then the entity is immune and the other … factors need not be considered." *Id.*

■■■■ In the case at bar, any judgment paid by VCU will be paid from the Virginia state treasury, as the state treasury is a major source of funds for the university.[3] This circumstance alone satisfies the *Harter* test.[4] VCU is an "arm of the state," and, consequently, the Eleventh Amendment applies here. A complaint alleging a claim under section 1983 does not constitute a waiver of a state's Eleventh Amendment immunity. *Will v. Michigan Dep't State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Therefore, the Court grants VCU's motion under Rule 12(b)(1) to dismiss all claims against it on the ground that VCU

has not waived its immunity under the Eleventh Amendment. This leads to the question: do the claims against President Trani still stand?

■■■■ With respect to the *damages* claims against President Trani in his official capacity, he is also considered an "arm of the state" for purposes of the Eleventh Amendment. *See Will,* 491 U.S. at 70–71, 109 S.Ct. 2304 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").[5] Yet state officials are not necessarily immune from suits to enjoin alleged continuing violations of federal law, *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), nor are they immune under the Eleventh Amendment from suits for declaratory relief and damages in their individual capacity, *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In the case at bar, DeBauche has not alleged that President Trani has been engaged in a *continuing* violation of her constitutional rights. Rather, the Amended Complaint asks for "a mandatory injunction commanding the defendants, their officers, employees, agents, successors or assigns, etc., to enjoin the defendants' interference with her exercise of her constitutional rights in the future." Amended Compl. at para. 102. In other words, DeBauche would like an injunction that would prohibit President

---

**3.** Even when VCU receives funds from sources outside of the state treasury, such as student fees, Virginia law requires that these funds from private sources be deposited into the Commonwealth's treasury and be appropriated by the Virginia General Assembly, *See* Va.Code § 2.1–180 (state agencies required to deposit funds "from any source" in state treasury, except for "endowment" funds).

**4.** The other factors under the *Harter* test fall in VCU's favor as well. VCU is controlled by a Board of Visitors, whose members are appointed by the Governor and approved by Virginia's General Assembly. *See* Va.Code § 23–50.6. VCU is under the control of the General Assembly. *See* Va. Const. art. VIII, § 9. Additionally, VCU's purpose of higher education is a statewide, rather than a local, concern. Finally, Virginia law treats the university "as the Commonwealth." *See* Va.Code § 23–50.4 (establishing VCU as a state entity). Its operating funds are substantial-

ly derived from Virginia's state tax revenues, and, like other state agencies and institutions, the Attorney General is the legal counsel and advisor for VCU.

**5.** In any event, the claim against President Trani is barred by the doctrine of qualified immunity. The doctrine of qualified immunity provides that government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). DeBauche has not alleged that President Trani played any role in the decision to invite only Gilmore and Beyer for Debate Virginia; therefore, she has not sufficiently alleged that he discriminated against her. No "clearly established statutory or constitutional right" was alleged to have been violated.

Trani from violating a right that he is not currently violating. Unlike the situation in *Young,* DeBauche does not allege that President Trani is now engaged in an action that requires any federal intervention. As there is no allegation of a continuing violation, the Young exception does not apply. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985) (affirming that *Young* exception limited to situations involving continuing violations of federal law). Consequently, Trani has complete Eleventh Amendment immunity in his official capacity.

### ii. State Action by President Trani in His Individual Capacity

■■■■■ In order to allege a claim under section 1983,[6] a complaint must allege that the defendant's actions denied a federal right and occurred under color of law. This "under color of law" requirement is the same as the state action requirement for a claim under the Fourteenth Amendment. *Lugar v. Edmondson Oil, Co., Inc.,* 457 U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). De-Bauche essentially argues that, because VCU jointly sponsored the debate, all of the individual organizers were state actors, and they should be accountable for her exclusion. VCU, on the other hand, convincingly argues that DeBauche's brand of "sponsorship" is an insufficient theory of state action. Here, VCU's "sponsorship" occurred after Wilder's decision to invite only Beyer and Gilmore, and this "sponsorship" included only VCU's providing access to its facilities, use of certain managers and publicity. Even in a situation where the government or a state entity had a significant role in organizing a speaking event, the Fourth Circuit has held that the government's involvement did not necessarily make the private organizers state actors. In *United Auto Workers v. Gaston Festivals,* 43 F.3d 902 (4th Cir.1995), a city and a nonprofit corporation co-sponsored an annual festival to be held on public streets and private property. The private organizers barred the distribution of any controver-

sial material at the festival. The United Auto Workers wanted to distribute controversial materials and was denied access; it sued. The Fourth Circuit held that, despite the city's $10,000 donation, its authority to permit the event and its commitment to provide municipal services, the private organizers were not state actors. *Id.* at 914.

In fact, an attempt by VCU in the instant case to dictate whom any private organizer could invite would threaten that individual's First Amendment rights. In *Sistrunk v. City of Strongsville,* 99 F.3d 194 (6th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2409, 138 L.Ed.2d 175 (1997), a city leased its commons to the Bush Re–Election Campaign for a political rally and provided substantial promotional support as well as organizational assistance. The Campaign prohibited any critical expression of Bush at the rally. Still, the Sixth Circuit found that the rally did not violate First Amendment rights of those who wished to attend the rally in order to oppose the Bush message. According to the Court, "the present case strongly suggests that the city could not have required the committee to include in the rally persons imparting a message that the committee did not wish to convey." *Id.* at 198.

The government's role in *Sistrunk* and *Gaston Festivals* was as extensive as it was through VCU in the case at bar. VCU's level of sponsorship is not enough to make President Trani in his individual capacity a state actor. Thus, the Court grants the University Defendants' motion to dismiss the Amended Complaint as to Trani in his individual capacity for failure to sufficiently allege state action.

### 2. CVETC, Clear Channel Radio and Wilder

#### i. State Action

Again, in order to allege a claim under section 1983, a complaint must allege that the defendant's actions denied a federal right and occurred under color of law. The con-

---

6. Section 1983 provides that
   [e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983.

724

duct that allegedly caused denial of a federal right must be "fairly attributable to the State." *Lugar*, 457 U.S. at 937, 102 S.Ct. 2744. There are two prongs to the fair attribution test. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* Then, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and this last prong may be satisfied if the defendant "acted together with or has obtained significant aid from state officials." Id.

■ DeBauche does not come close to satisfying this second prong. In the Amended Complaint, DeBauche claims that CVETC and Clear Channel Radio denied her rights under the First Amendment and the Equal Protection Clause by excluding her from Debate Virginia. Her claim hinges on the allegation that CVETC and Clear Channel Radio, both private corporations, "jointly sponsored" Debate Virginia with state entity VCU. Yet the Amended Complaint does not sufficiently allege that Clear Channel Radio and CVETC acted under color of law; it fails to allege facts that show Clear Channel Radio and CVETC were "intertwined in a 'symbiotic relationship'" with VCU involving DeBauche's *exclusion* from Debate Virginia. *See Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 215 (4th Cir.1993). Joint "sponsorship" of the debate, here, publicizing and airing it, is not equivalent to joint involvement in the decision to exclude certain individuals from the debate. There are simply insufficient allegations of fact to permit the Court to reach the conclusion that CVETC and Clear Channel Radio have acted under color of law

in the decision to exclude her from the debate. Consequently, the Amended Complaint against CVETC and Clear Channel Radio must be dismissed for failure to state a claim upon which relief can be granted.

■ Moreover, there is insufficient joint involvement between VCU and Wilder in the decision to exclude certain individuals from the debate. As expressed earlier concerning President Trani in his individual capacity, the level of VCU's involvement was not enough to attribute state action to any of the defendants here.[7] Wilder alone decided to invite only Gilmore and Beyer, and he has a First Amendment right to do so even if the debate occurred on the grounds of a state university. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group*, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (holding state courts' application of public accommodations law to essentially require defendants to alter expressive content of parade by including homosexual, lesbian and bisexual group violated parade organizers' First Amendment rights); *Sistrunk*, 99 F.3d 194 (holding no First Amendment violation where city leased town commons to private political organization for holding a rally and that organization in turn prohibited plaintiff due to her political speech). Since Wilder was also not acting under color of law, the Amended Complaint must be dismissed to him, as well, for failure to state a claim upon which relief can be granted.[8]

### ii. Attorney's Fees and Costs

CVETC, Clear Channel Radio and Wilder also request attorney's fees and costs. Title 42, section 1988 of the United States Code states that in a section 1983 action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as

7. With no legitimate claim of joint action, as the Fourth Circuit stated in *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir. 1993), a private party can be deemed a state actor in only four contexts: (1) when the state coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; and (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. *Id.* at 217. DeBauche does not allege that any of those contexts exist here for any of the private parties.

8. CVETC, Clear Channel Radio and Wilder also claim that they have qualified immunity to this suit. However, qualified immunity is only available to government officials, not private individuals and corporations. *See Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

part of the costs." Courts have construed section 1988 to mean that the defendant is entitled to a fee award where the action is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Court has determined that DeBauche's claims against CVETC and Clear Channel Radio were without foundation, as the two were not even alleged to have played a role in the decision to exclude her from the debate. As for Wilder, he had a First Amendment right to not include De-Bauche, and her attempt to make him a state actor because VCU only helped execute the debate was baseless and unreasonable. Therefore, CVETC, Clear Channel Radio and Wilder may pursue their requests for attorney's fees.

### III. Conclusion

In short, the Court GRANTS the University Defendants' motion to dismiss the Amended Complaint as to VCU and President Trani in his official capacity under Rule 12(b)(1) due to Eleventh Amendment immunity. The Court GRANTS the motion to dismiss the Amended Complaint as to President Trani in his individual capacity under Rule 12(b)(6) for failure to sufficiently allege state action. The Court GRANTS CVETC, Clear Channel Radio and Wilder's motions to dismiss the Amended Complaint under Rule 12(b)(6) for failure to sufficiently allege state action as well as CVETC, Clear Channel Radio and Wilder's requests for attorney's fees and costs. CVETC, Clear Channel Radio and Wilder may pursue their requests for costs by submitting a bill of costs as outlined by the Local Rules, and they may pursue their requests for attorney's fees by submitting further supporting documentation to the Court. They must file the requests for costs and documentation for attorney's fees within fourteen (14) days from the date of entry of the Order concerning the motions to dismiss. After the issue of costs and attorney's fees is resolved, the case will be dismissed.