In re Karen Y. JORDON, Debtor.

Karen Y. Jordon, Plaintiff,

v.

Norfolk State University, U.S. Department of Education, Commonwealth of Virginia, and Roy Wolfe, Trustee, Defendants.

Bankruptcy No. 5–01–00764.
Adversary No. 5–01–00061.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

March 12, 2002.

Darren T. Delafield, Roanoke, VA, for debtor.

Roy V. Wolfe, III, Harrisonburg, VA, trustee.

## ORDER

ROSS W. KRUMM, Chief Judge.

The issue before the court is whether a state university's assertion of sovereign immunity bars a debtor's complaint to determine the dischargeability of a student loan indebtedness.

### Background

On August 31, 2001, Karen Y. Jordon (hereinafter Debtor) filed a complaint to determine the dischargeability of a student loan pursuant to 11 U.S.C. § 523(a)(2)(8). The Debtor accepted financial aid in the form of a Perkins Loan approximately twelve years ago to attend Norfolk State University (hereinafter NSU) where she studied Psychology. The Debtor did not complete her education and subsequently defaulted on loan obligations. NSU refused to release her transcript due to non-payment of her student loans. The debtor alleges that she has not been able to secure sufficiently gainful employment to enable her to make her loan payments. The Debtor lives with her parents and has custody of and provides care for a minor child. The Debtor requests that the court declare all or part of her indebtedness discharged pursuant to 11 U.S.C. 523(a)(8),[1] or, in the alternative, that the court order NSU to release her transcripts so that she may transfer to another school and complete her education.

On October 4, 2001, NSU filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure arguing that the court lacks subject matter jurisdiction to address the Debtor's complaint.[2] Specifically, NSU contends that it is protected by the cloak of sovereign immunity enjoyed by the Commonwealth of Virginia; thus, the adversary proceeding in this bankruptcy court should be dismissed.

### Rulings of Law

The Eleventh Amendment states that "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, cases [decided by the Supreme Court] have extended the Amendment's applicability to suits by citizens against their own States." *Board of Trustees v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 665, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The primary safeguard of the Eleventh Amendment prevents nonconsenting States from being sued in federal court by private individuals. *See Kimel*, 528 U.S. at 73, 120 S.Ct. 631. "The founding gener-

---

1. 11 U.S.C. § 523(a)(8) provides the following:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
   (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

2. Bankruptcy Rule 7012 makes applicable in adversary proceedings Rule 12(b)-(h) of the Federal Rules of Civil Procedure.

ation thought it neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons." *Alden v. Maine,* 527 U.S. 706, 748, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (quotations omitted). This immunity is likewise afforded to a State's agencies, which are considered to be arms of the State. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

The filing of a suit against a State generally triggers Eleventh Amendment immunity. In this district, an adversary proceeding, which summons the State to appear in federal court in order to avoid a default judgment, is considered to be a suit for the purposes of sovereign immunity. *See University of Virginia v. Robertson,* 243 B.R. 657, 665 (W.D.Va.2000) (holding that a debtor's adversary proceeding against the University of Virginia to determine the dischargeability of a debt is a suit for Eleventh Amendment purposes).

Not all proceedings in a federal bankruptcy court, however, invoke Eleventh Amendment immunity. In *Virginia v. Collins (In re Collins),* 173 F.3d 924 (4th Cir.1999), the court held that a motion to reopen a bankruptcy case, which allowed the bankruptcy court to determine the dischargeability of a debt owed to the Commonwealth of Virginia and which did not name the State as a defendant and did not force the State to appear in federal court against its will, was not a suit that implicated the Eleventh Amendment. In *Collins,* Virginia obtained a pre-petition judgment against the debtor. The debtor filed a petition under Chapter 7 and listed Virginia's judgment. Virginia did not file a proof of claim, nor did it object when the court released the debtor from all dis-chargeable debts. Some years later, however, Virginia sued to garnish the debtor's wages to collect on its judgment. The debtor moved to reopen the bankruptcy case to determine if the debt was dischargeable. The Fourth Circuit held that the motion to reopen and the determination that the debt was discharged was not a suit against a State because although Virginia was mailed a copy of the motion, it was not named as a defendant in an adversary proceeding or served with compulsory process. *Collins,* 173 F.3d at 929–30. *Cf. Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777 (4th Cir.) (stating that confirmation order in Chapter 11 case, which exempted transfers of property from state and local taxes, was not a suit against a State and power of a bankruptcy court to enter such an order derives from jurisdiction over debtors and their estates).

Discussing the *Collins* and other Fourth Circuit decisions, Senior Judge Kiser stated that it does not appear that the Eleventh Amendment "bar[s] certain bankruptcy actions asking the court to, in effect, block the state from possessing an asset that it does not presently possess." *Robertson,* 243 B.R. at 665. In other words, sovereign immunity applies when, by way of motion or adversary proceeding, a debtor asks a federal court to dispossess a State of an asset it presently possesses or when, through an adversary proceeding (which utilizes service of summons and compulsory process), a debtor asks a federal court to prevent the state from receiving an asset it does not presently possess. As Judge Kiser pointed out, "[a] debtor may still [in certain circumstances] file a motion asking the court to block the transfer of an asset presently in the debtor's estate to a state treasury." *Robertson,* 243 B.R. at 665.

Based on the foregoing, it appears that the Debtor's case should be dismissed since it is a suit (with service of a summons and compulsory process) filed against one of the United States. The facts here are distinguishable from those addressed by the *Collins* court. The reasoning from the *Collins* case would not appear applicable until NSU attempts to enforce the note post-discharge and the debtor responds by filing appropriate motions in the bankruptcy court. *See Robertson*, 243 B.R. at 665. It is no defense that the suit named NSU separately from the Commonwealth of Virginia. NSU is undisputably an agent of the state. It is controlled by the Board of Visitors, whose members are appointed by the Governor and approved by the General Assembly. *See* Va.Code § 23–174.4. NSU's purpose of higher education is a statewide concern. *See DeBauche v. Virginia Commonwealth Univ.*, 7 F.Supp.2d 718, 722 n. 4 (E.D.Va. 1998). Finally, Virginia treats NSU as the Commonwealth. *See* Va.Code § 23.174.1. The court can properly refer to NSU as the Commonwealth of Virginia and the Debtor's complaint filed against NSU is not well-taken.

The Debtor's suit, however, may be viable if Congress validly abrogated Virginia's immunity, if Virginia waived or consented to the suit, or if the *Ex parte Young* exception applies. The Debtor essentially argues that each of the above mentioned exceptions applies. The court is not convinced that the Debtor's positions, in these respects, are sound.

■ "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 248, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Furthermore, the Supreme Court requires this congressional abrogation of sovereign immunity to be made pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363, 121 S.Ct. 955. The Court has held that Congress may not abrogate Eleventh Amendment immunity based on powers enumerated in Article I. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 59 & 72, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). To date, section 5 of the Fourteenth Amendment is the only recognized source of congressional power to abrogate a State's immunity. Despite the language of 11 U.S.C. § 106(a), which attempts to abrogate the sovereign immunity of a governmental unit with respect to, *inter alia*, § 523, the holding of *Seminole* appears to render the abrogation without force. *See Snyder v. Board of Regents University of Nebraska*, 228 B.R. 712, 715–16. *Schlossberg v. Maryland (In re Creative Goldsmiths of Wash., D.C., Inc.)*, 119 F.3d 1140, 1147 (4th Cir.1997) (holding that § 106(a) & (b) offend the Eleventh Amendment). The court, therefore, accepts that Congress has not validly abrogated Virginia's immunity.

■ A State may waive immunity in a bankruptcy case by filing a proof of claim. NSU has not done so here. Furthermore, it cannot be said that the mere participation of a State in a program through which the federal government provides assistance is tantamount to a waiver of sovereign immunity. For the state to waive immunity by participating in a federal government program, the State must unequivocally indicate its intent to consent to jurisdiction. *See Atascadero State Hosp.*, 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The Court also stated in *Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) that a state agency's specific agreement "to obey federal law in administering the program can hardly be deemed an express waiver of Eleventh Amendment immunity."

In the case *In re Innes,* 184 F.3d 1275 (10th Cir.1999), the court found that a state school validly waived Eleventh Amendment immunity. Although the court held that a statute generally authorizing educational institutions to be sued was not sufficient to waive immunity,[3] it found a waiver by evaluating whether the state "otherwise waiv[ed] its immunity to suit in the context of a particular federal program." *Id.* at 1279 (citing *Atascadero,* 473 U.S. at 238 n. 1, 105 S.Ct. 3142). The *Innes* court found that the state statute, which authorized state educational institutions to apply for and receive federal funds according to applicable federal regulations and which also granted state schools authority to waive immunity, sufficiently waived sovereign immunity.

■ Unlike the debtor in *Innes,* the instant Debtor has not provided this court with comparable provisions of Virginia's Code governing educational institutions, Va.Code Title 23, from which the court could find a waiver. Standing alone, the Debtor's argument that NSU waived immunity by participating in a program governed by various federal regulations is without merit. The portions of the student loan contract that reference applicable regulations cannot be read as an unequivocal indication of a waiver of governmental immunity.

■ The Debtor also argues that the *Ex parte Young* doctrine applies. Admittedly, the applicability of the Eleventh Amendment is less clear when the defendant named is not the State or one of its agencies. The Court held in *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908) that sovereign immunity does not protect a state officer who proceeds under an enactment that violates tenets of the Federal Constitution because such conduct strips the individual of official character, leaving the officer personally subject to the consequences of that action. The *Ex parte Young* doctrine applies "where the underlying authorization upon which the named official acts is asserted to be illegal." *B.H. Papasan v. Allain,* 478 U.S. 265, 277, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). In order to preserve the balance of federal and state interests, the *Ex parte Young* exception is limited to cases in which there is an ongoing violation of federal law by a state official. In other words, "where prospective relief is sought against an officer in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar." *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 276–77, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997).

■ The *Ex parte Young* exception is inapplicable to the case *sub judice.* The Debtor did not name an officer of NSU as a defendant, nor did the Debtor charge any officer of NSU with a violation of federal law.[4] Thus, the Debtor is unable

---

3. *See* Kan. Stat. Ann. § 76–713.

4. This decision, therefore, does not address or rule upon the applicability of the *Ex parte Young* exception to violations of 11 U.S.C. § 525, 11 U.S.C. § 362, or 11 U.S.C. § 524(a)(2); or violations of federal law or regulations not grounded in the Bankruptcy Code, e.g., 34 CFR 682.402(f)(2)(i) ("If the lender [of a loan governed by these regulations] is notified that a borrower has filed a petition for relief in bankruptcy, the lender must immediately suspend any collection efforts outside the bankruptcy proceeding against the borrower."). *See, e.g., In re Carson,* 150 B.R. 228, 231 (Bankr.E.D.Mo.1993) (discussing whether failure to release transcript violates automatic stay); *Buford v. Higher Education Assistance Foundation,* 85 B.R. 579, 582 (D.Kan.1988) (recognizing that a debtor may be able to obtain an injunction against a lender for attempting to collect a student loan after the filing of bankruptcy in violation of 34 CFR 682); *In the Matter of Heath,* 3 B.R. 351 (Bankr.N.D.Ill.1980) (discussing whether the practice of withholding a

to avail herself of the *Ex parte Young* doctrine.

The Debtor's remaining arguments that the Eleventh Amendment does not bar the instant case are not persuasive. First, the Debtor asserts that "[a]n order of discharge has already been entered and if the repayment of the student loan would impose an undue hardship, it has been discharged pursuant to § 523(a)(8)." In other words, the discharge of a student loan that imposes undue hardship is self-effectuating: neither the debtor nor the creditor is required to take any affirmative steps to determine dischargeability. According to the Debtor, student loans that impose an undue hardship do not fit within § 523(a)(8) exception to the discharge and are, therefore, discharged.

■■■ Among other flaws in the Debtor's interpretation of § 523(a)(8), the court believes the language of the Bankruptcy Code does not support the Debtor's argument. This court interprets § 523(a)(8) to mean that student loans are presumed nondischargeable and without a determination to the contrary, such loans are excepted from the discharge. The onus is placed on the debtor to seek an affirmative determination that the student loan is dischargeable. *See* Fed. R. Bankr.P. 4007(b) (editor's comment); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991); *In re Penn,* 262 B.R. 788, 791 (Bankr.W.D.Mo.2001). "If a specific determination to the contrary has not been entered in the bankruptcy case, by operation of the Bankruptcy Code the student loan debt is not discharged unless and until a court of competent jurisdiction determines that it is to be discharged pursuant to federal bankruptcy law." *Perkins v. Coordinating Board for Higher Ed., Missouri Student Loan Program (In re Perkins),* 228 B.R. 431, 433 (Bankr. E.D.Mo.1998). *See Odom v. Columbia Univ.,* 906 F.Supp. 188, 196 (S.D.N.Y.1995) (stating "creditor does not have an affirmative duty to seek a declaration that the loans are not dischargeable under the undue hardship exception")

■■■ The court recognizes that a debtor may at times be prevented by the Eleventh Amendment from affirmatively seeking a determination in federal court that a student loan debt is dischargeable when the debt is owed to a State or one of its agencies. However, there does not appear to be any provision in Title 11 of the United States Code that would categorically preclude a debtor from seeking a determination of dischargeability in state court. As declared by the above-cited *Penn* court, "both the bankruptcy court and any appropriate nonbankruptcy forum have jurisdiction to determine the dischargeability of a student loan debt." *In re Penn,* 262 B.R. at 791. *See In re Arnold,* 255 B.R. 845, 850 (Bankr.W.D.Tenn.2000) (stating "bankruptcy court and the state court have concurrent jurisdiction to address the dischargeability of student loan debts under section 523(a)(8)"); *In re Perkins,* 228 B.R. 431, 433 (Bankr.E.D.Mo.1998) (observing that both federal and state courts have concurrent jurisdiction to determine the dischargeability of a student loan debt); *In re Snyder,* 228 B.R. 712, 718 (Bankr.D.Neb.1998) (recognizing that a "citizen can sue the State in state court to attempt to obtain a discharge of a student loan" and allowing the debtor to refile in state court). *See also* Fed. R. Bankr.P. 4007 (advisory committee notes).

In *Indiana University v. Canganelli,* 149 Ill.App.3d 852, 856, 103 Ill.Dec. 278, 501 N.E.2d 299, 302 (1986), the Appellate

transcript is actionable discrimination under 11 U.S.C. § 525); *Johnson v. Edinboro State College,* 728 F.2d 163, 165 (3d Cir.1984) (rejecting argument that withholding transcript of nondischargeable debt violates 11 U.S.C. § 525).

Court of Illinois affirmed a trail court's ruling that the debtor showed undue hardship, thus, warranting the trial court's imposition of a permanent injunction against Indiana University from attempting to collect the student loan. The debtor in *Canganelli* attempted to reopen his bankruptcy case to determine dischargeability, but the bankruptcy court denied the motion. In state court the debtor argued that the educational debt owed to the university was dischargeable because it would be an undue hardship to repay. *See* 11 U.S.C. § 523(a)(8). The trial court found that nondischarge would indeed pose an undue hardship and found for the debtor. The university appealed arguing that the debtor was precluded from making the argument since he did not do so in bankruptcy court. The Appellate Court rejected the university's argument and recognized the state court's concurrent jurisdiction to determine dischargeability of the student loan. *See also New York State Higher Educ. Services Corp. v. Lucianna*, 284 N.J.Super. 603, 607, 666 A.2d 173, 175 (1995) (finding that debtor failed to meet the five year time requirement necessary to obtain discharge of student loan); *Massachusetts Higher Educ. Assistance Corp. v. Taylor*, 390 Mass. 755, 459 N.E.2d 807, 812 (1984) (reasoning that because student loans are not automatically dischargeable, fact that creditor of student loans did not appear in bankruptcy proceeding to contest dischargeability did not bar creditor from bringing subsequent action in state court).

As evidenced by the aforementioned cases, when concurrent jurisdiction lies in a nonbankruptcy court, a debtor may invoke any defenses provided by the bankruptcy code, e.g., dischargeability of a student loan based on the passage of time or on undue hardship. *See Perkins*, 228 B.R. at 433. Due to the Bankruptcy Code's goal to provide a debtor the ability to obtain a fresh start and in light of the importance of transcripts to this Debtor's endeavor to find gainful employment or to continue her education, this court believes it would be appropriate to permit the Debtor to pursue her dischargeability action against NSU in state court. *See In re Reese*, 38 B.R. 681, 683 (Bankr.N.D.Ga. 1984) (recognizing importance of transcript to rehabilitation of debtor). Leave such as this certainly squares with the Supreme Court's stated purpose of the bankruptcy laws to "give[ ] to the honest but unfortunate debtor ... a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

### Conclusion

The Debtor's action to determine the nondischargeability of a debt should be dismissed because, under the facts here, NSU can properly invoke sovereign immunity. The fact that the adversary proceeding named an agency of a State and issued a summons compelling it to submit to the jurisdiction of this court affronts the guarantees of the Eleventh Amendment. The Debtor's suit cannot find viability in a congressional abrogation of the States' immunity, neither did the Debtor sufficiently show the NSU waived or consented to jurisdiction, nor did she properly invoke the *Ex parte Young* doctrine. Lastly, the court finds that 11 U.S.C. 523(a)(8) presumes student loan debts to be nondischargeable absent a ruling to the contrary by a court of competent jurisdiction; the Debtor's arguments to the contrary are misplaced. Accordingly, it is

### ORDERED:

That the Debtor's Complaint to Determine the Dischargeability of Debt is DISMISSED without prejudice.

Copies of this decision and order are directed to be sent to Michael D. Hart,

Esquire, Counsel for the Debtor, P.O. Box 622, Roanoke, Virginia 24004 and to Patrick B. Kelly, Esquire, Counsel for Norfolk State University, Wilson Hall, Suite 540, 700 Park Avenue, Norfolk, Virginia 23504.